UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: JOSHUA GEARY (Debtor)

Chapter 7
Case No. 19-30170
Hon. Joan A. Lloyd

---

BACKLOTCARS, LLC (Creditor)
    Plaintiff,

v.

JOSHUA GEARY (Debtor)
    Defendant.

ADVERSARY PROCEEDING
CASE NO.

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY PURSUANT TO SECTION 523 AND SECTION 727 OF THE BANKRUPTCY CODE

Plaintiff- Creditor BackLotCars, Inc., ("BLC"), for its Complaint against Defendant-Debtor Joshua Geary ("Debtor"), respectfully alleges:

## JURISDICTION

1. On January 21, 2019, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Kentucky.

2. As of the date of this Complaint, the Debtor has not been granted a discharge.

3. This Complaint is timely, because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on April 22, 2019.

4. This is an adversary proceeding in which the plaintiff-creditor is seeking a determination as to the dischargeability of the debt owed by the Debtor and his company to BLC under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(4).

756497

5. This is also an adversary proceeding in which the plaintiff-creditor is seeking a determination as to the dischargeability of all debts under Bankruptcy Code §§727 (a)(2), (a)(3) and (a)(4).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

7. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

8. BLC is a business corporation organized under the laws of the State of Delaware.

9. BLC is a creditor of the Debtor and his automobile dealership, Cliff & Sons Auto Sales ("Dealer").

10. The Debtor in the above-captioned case, Joshua Geary ("Geary"), is a Defendant in this proceeding and at all relevant times has resided in Jefferson County, Louisville Kentucky. Upon information and belief, Debtor, with Clifton R. Geary, Jr., owned and operated a used vehicle dealership at 7053 Dixie Highway Louisville, Kentucky 40258 under the name Cliff & Sons Auto Sales ("Dealer").

11. Upon information and belief, Debtor and Clifton R. Geary, Jr. each own or owned fifty percent (50%) of Cliff and Sons Auto Sales, LLC ("CASAS"), a Kentucky limited liability company.

12. Debtor has listed BLC as an unsecured creditor on his bankruptcy schedules in this action.

## FACTS APPLICABLE TO ALL COUNTS

13. In July of 2018, Dealer and BLC executed and entered into a Float Financing Agreement ("Financing Agreement") pursuant to which BLC extended credit to Dealer to finance the purchase of used cars which were placed in the Dealer's inventory and then resold by Dealer to its customers. A true and correct copy of the Financing Agreement signed by the Clifton Geary for Dealer and is attached hereto as **Exhibit A** and incorporated herein by reference.

14. Under the Financing Agreement, BLC was granted and held a purchase money security interest in all inventory financed by BLC. In turn, the Dealer were required, *inter alia*, to repay BLC for all advances made to the dealer within the earlier of (i) 48 hours of the sale of a vehicle financed by BLC, or (ii) 45 days from the advance being made. Upon the sale of vehicle(s) financed by BLC, the Dealer was required to hold the funds received in trust for the benefit of BLC, with Dealer having fiduciary duties to BLC as to such funds.

15. Debtor, on behalf of Dealer, sold a 2012 Dodge Charger out of trust in violation of the terms of the Financing Agreement. Debtor knowingly and intentionally diverted or converted the funds from the sale of the 2012 Dodge Charger for its own benefit and in violation of the fiduciary duty owed to BLC.

16. Further, Debtor, on behalf of Dealer, knowingly and intentionally delivered two separate checks to BLC, which Debtor knew or should have known would be returned for not sufficient funds (NSF), as purported repay for advances from BLC associated with the sale of a 2008 Ford F-150 XLT SuperCrew and a 2013 Hyundai Tuscan Limited.

17. BLC released the titles to the 2008 Ford and 2013 Hyundai to Dealer in reliance on the checks received from Dealer, yet the checks were returned NSF. Debtor knowingly and intentionally delivered bad checks to BLC in order to obtain the titles.

18. Debtor and Dealer were obligated to return the funds advanced by BLC to Dealer for the 2012 Dodge Charger, the 2008 Ford F150, and the 2013 Hyundai (collectively, the "Vehicles"), but knowingly and intentionally did not return the proceeds owed to BLC and held by Debtor and Dealer in trust and as a fiduciary of BLC.

19. Debtor and Dealer fraudulently and/or intentionally breached the terms of the Financing Agreement when it diverted the proceeds advanced by BLC, purposefully breached its contractual and/or fiduciary obligation to BLC, wrongfully resold the Vehicles, misrepresented to BLC that the proceeds would be paid for the Vehicle and then failed and/or refused to pay BLC the original proceeds advanced for the Vehicle or the proceeds from the wrongful sale of the Vehicle by Debtor and Dealer.

20. Debtor and Dealer misrepresentations to BLC and the resale of the Vehicle in knowing and intentional violation of BLC's security interest in the Vehicles, which included the right to receive any proceeds from the sale thereof, constitutes theft, conversion, or fraud.

21. Geary, an equal owner of Dealer, participated in, authorized, ratified, was aware of, complicit in or benefited from the fraudulent misrepresentations and the intentional and wrongful misconduct of Dealer, and should be held personally, jointly, and severally liable for such misconduct.

22. Based on information and belief, Clifton Geary wrongfully assigned the assets of CASAS to his sons, and also assigned CASAS's Kentucky Used Motor Vehicle Dealer License to his sons, who now operate and own the assets as Cliff & Sons Auto Sales II at the same location as CASAS. Clifton Geary's sons now receive the monetary benefit and rights of the CASAS assets, including a Kentucky Motor Vehicle Dealer license.

23. Based on information and belief, Debtor is still involved in the business.

4

24. Through January 28, 2019, the balance due under the Financing Agreement is $37,540.00. BLC is also due its collection costs, reasonable attorney fees and court costs from Clifton Geary, Debtor, and CASAS for their false statements, deception fraud and violation of the fiduciary duty to protect BLC's interest in the Vehicle.

25. BLC has claims for breach of contract, misrepresentation, unjust enrichment, fraud, deception, conversion, statutory damages, attorney fees, collection and court costs with respect to the debt which Debtor seeks to have discharged by this Court.

26. Upon information and belief, Debtor, knowingly and fraudulently, failed to disclose to the trustee in this action and concealed his interest in Cliff & Sons Auto Sales, LLC and/or his interest in automobiles and/or the proceeds from sales of automobiles, and Debtor failed to fully disclose and concealed documentation related thereto.

27. Debtor's Bankruptcy Schedules SOFA question 18 filed on February 18, 2019, lists transfers made to his wife for no consideration in the two years pre-petition.

## COUNT I

### NON-DISCHARGEABILITY OF BLC'S CLAIMS AGAINST GEARY UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

32. BLC repeats and re-alleges the allegations set forth in the above paragraphs of this Complaint as if set forth at length herein.

33. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . .

34. All or part of the debt owed to BLC is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code §§ 523(a)(2)(A).

## COUNT II

### NON-DISCHARGEABILITY OF BLC'S CLAIMS AGAINST GEARY UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

35. BLC repeats and re-alleges the allegations set forth in the above paragraphs of this Complaint as if set forth at length herein.

36. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
> . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

37. All or part of the debt owed by Debtor to BLC are non-dischargeable as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(4).

## COUNT III

### NON-DISCHARGEABILITY OF ALL DEBTS UNDER SECTIONS 727(A) (2)-(4) OF THE BANKRUPTCY CODE

38. BLC repeats and re-alleges the allegations set forth in the above paragraphs of this Complaint as if set forth at length herein.

39. Bankruptcy Code §§ 727(a) (2)-(4) provides that the debtor should be granted a discharge, unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

40. The Debtor violated one or more of the provisions of Code §§727 (a)(2), (a)(3) and (a)(4) and should not be granted a discharge.

WHEREFORE, Plaintiff BackLotCars, Inc. respectfully requests that this Court enter a Judgment in its favor and against Joshua Geary and his dealership determining that the Debtor and his business owe the debt to BLC in the amount of $37,540.00 with prejudgment and post judgment interest at the highest allow rate, plus collection costs, reasonable attorney fees and court costs from and his dealership for their false statements, deception, fraud and violation of the fiduciary duty to protect the interest in the vehicles purchased and funds advanced by BLC and that the debt be declared non-dischargeable under Bankruptcy Code § 523(a)(2)(A) and 523(a)(4), and that all

7

debts be declared not subject to discharged under Bankruptcy Code §§727 (a)(2), (a)(3) and (a)(4), granting BLC such other and further relief as this Court may deem just and proper.

Respectfully submitted

*s/ Peter M. Gannott*
Peter M. Gannott
Gannott Law Group
10230 Shelbyville Road
Suite 6
Louisville, Kentucky 40223
(502) 749-8800
pgannott@gannottlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was on this **22th** day of **April 2019**, sent via the ECF system to those persons receiving service in that fashion.

*/s/ Peter M. Gannott*
Peter M. Gannott

# FLOAT FINANCING AGREEMENT

This Agreement ("Agreement") is made and entered into by, between, and among BacklotCars, Inc. ("Lender") and Cliff and Sons Auto Sales. ("Dealer") (collectively the "Parties" or individually a "Party," as the case may be).

## I. RECITALS

1.01   Dealer wishes to finance its inventory of vehicles. Lender wishes to establish a revolving line of credit to make advances to Dealer to finance its inventory.

1.02   Dealer and Lender acknowledge that Lender requires security for its present and future advances to Dealer. This will take the form of security interests under this Agreement and such security interests that may arise by operation of law. As further security for the advancements, a Guarantor may guaranty Dealer's obligations to Lender under this Agreement.

## II. FINANCING AGREEMENT

2.01   <u>Recitals Incorporated.</u> The recitals are incorporated into the remainder of this Agreement by reference.

2.02   <u>Advances.</u> Lender agrees to advance to Dealer an advance total up to $50,000 (Fifty Thousand Dollars the "Aggregate Advance Limit") to finance its inventory of vehicles. Lender may, in its sole discretion, make further advances to Dealer to finance Dealer's inventory. Lender may, in its sole discretion, cease making any further advances to Dealer at any time and for any reason. Dealer agrees to use any advances it receives from Lender solely for financing its inventory and for no other purpose. In no event shall Dealer receive advances from Lender that, in the aggregate, exceed the Aggregate Advance Limit, unless Lender specifically approves of the same. Dealer shall repay to Lender, as provided for in this Agreement, all advances received, whether or not such advances exceed the Aggregate Advance Limit, with all other amounts due pursuant to this Agreement. Dealer shall only purchase inventory vehicles through BacklotCars, Inc. **Motorcycles, RVs, Boats, ATVs and similar vehicles are not eligible for float.** Lender may revoke any approval at any time and for any reason.

2.03   <u>Advance Requests and Procedure.</u> Dealer may obtain an advance by purchasing inventory vehicles through BacklotCars. Dealer shall execute a bill of sale for any purchased inventory. Lender shall advance the purchase price of such inventory on behalf of Dealer. Dealer shall write and deliver a check for purchase price of the vehicle along with any buy fees, transport fees, and float fees not later than 48 hours from purchase. Lender will hold dealer's check for a term of 45 days unless the dealer sells the car before 45 days. Lender will deliver the title to Dealer upon cashing Dealer's check.

2.04   <u>Advances Without Request.</u> Dealer hereby appoints Lender and its agents, employees, officers, and other representatives as its attorney-in-fact and agent to make such



payments on behalf of Dealer that Lender, in its sole discretion, feels is necessary to protect its Collateral or otherwise protects its interests under this Agreement. Such payments, if made, shall constitute another advance to Dealer and Dealer shall repay the same to Lender as provided for in this Agreement. This power of attorney includes, without limitation, the power to pay any unpaid obligations Dealer may have to third parties including, without limitation, insurance premiums and taxes related to the Collateral and sign titles as dealer's agent. This power of attorney shall survive dissolution, cancellation, or such other event causing Dealer's corporate, non-corporate, or other existence to end. Lender may exercise this power of attorney without notice to Dealer. In no event shall Lender have any obligation to make any payments on behalf of Dealer. Advances made under this paragraph shall not count against the Aggregate Advance Limit.

2.05 **Fees and Expenses.** Dealer shall pay to Lender any and all fees and expenses that Lender may incur during the performance of this Agreement including, without limitation, any fees for filing financing statements, inspection fees, and all other charges and fees of any nature. Such fees and expenses shall be considered advances and Dealer shall repay the same as provided for in this Agreement. Advances made under this paragraph shall not count against the Aggregate Advance Limit.

2.06 **Repayment.** Dealer shall repay to Lender all advances made to Dealer within the earlier of (1) 48 hours of the sale of a vehicle in Dealer's inventory, in such case the repayment shall be no less than the portion of the advance such vehicle represents; or (2) 45 days from the advance being made ("Maturity Date"). Dealer shall pay any other amount due to Lender pursuant to this Agreement upon request or demand. Any amounts Dealer owes to Lender under this Agreement shall be due whether any inventory vehicles are sold or not. All payments to Lender shall be in U.S. dollars. Dealer shall make payments directly to Lender at Lender's offices or such other place as Lender may direct. Lender may apply payments received by Dealer to amounts owed by Dealer in any order and to any obligation at its discretion. In the event that lender has not received title within 30 days from seller, repayment will not be due until lender receives title and dealer will not be charged additional fees on that particular inventory.

2.07 **Interest.** No interest will occur under this program only fees set forth based on price.

2.08 **Late Fee.** Dealer shall pay to Lender a non-refundable late fee of $75 per advance, in addition to all other amounts due, in the event that an advance is not repaid within 48 hours of due date.

2.09 **Float Fees.** Dealer will pay float fees in the following amounts based on purchase price:

$1.00-$7,000.00= $150.00 fee

$7,001.00-$10,000= $200.00 fee

$10,001-$12,000= $250.00 fee

$12,001+ = Approved on a case by case basis



**Inventory purchases over $10,000.00 are not eligible for this program.**

2.10 <u>Security Interest.</u> To secure all advances—whether now made or made in the future—and all fees, expenses, costs, and all other amounts that Dealer may owe now or in the future under this Agreement, Dealer hereby grants to Lender security interests in all of Dealer's inventory, security interests Dealer may obtain in the sale of items of inventory, equipment, deposit accounts, documents, chattel paper, and all of Dealer's rights to receive payment of money or goods—whether or not represented or authenticated in a record or instrument or otherwise—and all proceeds from any part of the foregoing and all security interests that may arise by operation of law (the "Collateral"). The parties acknowledge that Lender's security interest in Dealer's inventory is a purchase money security interest under the Uniform Commercial Code.

2.11 <u>Power of Attorney.</u> Dealer hereby irrevocably appoints Lender and its agents, employees, officers, and other representatives to be its attorney-in-fact and agent to do all things and to execute all documents and instruments that may be necessary to: access Dealer's property, including, without limitation, its place of business, accounting software, books and records, and accounts with banks and other financial institutions; to take possession of, access, use, control, or take control of Collateral or to perfect or otherwise effectuate Lender's security interests in the Collateral; and to deposit or withdraw money from any deposit account or other account Dealer maintains with any bank or other financial institution. Lender may exercise any powers of attorney granted in this Agreement without notice to Dealer. This power of attorney shall survive dissolution, cancellation, or such other event causing Dealer's corporate, non-corporate, or other existence to end. Dealer shall provide upon request or demand all information that Lender may request to exercise this power of attorney, including, without limitation, passwords and account numbers. It is expressly understood, acknowledged, and agreed that Lender may exercise the powers of attorney granted in this Agreement to protect its own interests, including, without limitation, by retrieving funds from Dealer's financial accounts to satisfy Dealer's obligations to Lender, executing title documents naming itself as a secured party, and contacting persons owing payment of money to Dealer so that such payment shall be directed to Lender. Dealer hereby knowingly waives and releases any and all claims it may have against Lender by reason of Lender exercising its powers under this Agreement. Dealer hereby acknowledges that all powers granted to Lender under this Agreement represent a power coupled with an interest and are irrevocable.

2.12 <u>Term.</u> This Agreement shall be in effect unless and until Lender gives notice to Dealer that it is terminating this Agreement, which it may do at its discretion. This Agreement shall also terminate as otherwise provided by law. Notwithstanding termination of this Agreement, Dealer shall continue to owe any amounts due to Lender as provided for in this Agreement.

### III. DEALER'S COVENANTS

3.01 <u>Disposition of Collateral and Proceeds.</u> Absent Default, Dealer may sell its vehicle inventory to buyers in the ordinary course of business. Dealer must make best efforts to sell the vehicle inventory at the highest price, and in no circumstance at less than fair



market value. Sales to buyers in the ordinary course of business are the only dispositions of Collateral that Dealer is authorized to make. Upon the sale of any such item of inventory, Dealer shall hold the amount received in the disposition of such item of inventory in trust for the benefit of Lender and Dealer shall pay to Lender all amounts due. Dealer acknowledges that by holding this money in trust for Lender's benefit it has fiduciary duties to Lender, independent from this Agreement. Breach of such fiduciary duties is tortious, wrongful, and fraudulent. Dealer hereby acknowledges that punitive damages would be an appropriate remedy for such breach of trust and breach of fiduciary duty.

3.02    Maintenance of Collateral. Dealer shall keep the Collateral free from any other security interests, liens, mortgages, claims, demands, or other charges or encumbrances. To the extent that Dealer may obtain any security interest in an item of vehicle inventory, it is agreed and understood that Lender's security interest in such vehicle shall be a superior and prior security interest in such vehicle, to the extent allowed by law, and Dealer hereby agrees to subordinate its security interest or claim to such vehicle to Lender's security interest. Dealer shall keep and maintain the Collateral in good repair and condition and shall further keep the vehicle inventory in condition for sale as a new vehicle and not alter, destroy, or substantially modify the vehicle inventory. Dealer shall keep and maintain the Collateral in such a fashion that Lender may satisfy any amounts that Dealer may owe to Lender from such Collateral. Dealer shall not disclaim or assign any right to receive payment or other property, deplete any of its accounts with banks or other financial institutions, or do anything with the Collateral that would otherwise diminish Lender's rights in it or Lender's ability to exercise the same. Dealer shall not hide or conceal any Collateral.

3.03    Books and Records. Dealer shall keep true and accurate books and records concerning its business affairs and the Collateral. Without limiting this obligation, Dealer shall keep accurate records regarding all vehicle inventory, including, without limitation, the number of vehicles on its lots, which vehicles are inventory Collateral under this Agreement, sales of vehicles, the amount received in the disposition of any inventory, accurate accounting of what is done with the proceeds of inventory sales, and any financing arrangements that Dealer may have with purchasers of items of inventory. Dealer shall provide copies of any such books and records to Lender upon request or demand.

3.04    Insurance. Dealer shall insure the Collateral against such risks and in such amounts as Lender may approve. Dealer shall provide to Lender copies of all such insurance policies together with evidence that the premiums for such policies have been paid. Dealer shall be named as an insured on such policies. To the extent of amounts owed to Lender under this Agreement, proceeds of any loss under such policies are hereby assigned to Lender. If Lender determines at any time that Dealer has not provided adequate insurance coverage for the Collateral Lender may, but has no obligation to, purchase such insurance that it considers, in its sole discretion, suitable to insure the Collateral and treat the cost of such insurance as advances to Dealer to be repaid pursuant to this Agreement and such advances shall not be counted toward the Aggregate Advance Limit.



3.05 <u>Taxes.</u> Dealer shall pay all taxes and assessments related to its business and affairs and all taxes and assessments that may be assessed related to the Collateral, and pay the same when they become due. Lender may, but has no obligation to, pay any such taxes and assessments and treat the same as advances to Dealer to be repaid pursuant to this Agreement and such advances shall not be counted toward the Aggregate Advance Limit.

3.06 <u>Notice of Litigation.</u> Dealer shall notify Lender within 5 days after service of process or other notice of litigation, arbitration, or other proceedings in any jurisdiction, whether criminal, civil, administrative, or otherwise, that affects Dealer or the Collateral.

3.07 <u>Unlawful Activity.</u> Dealer shall comply with all laws, regulations, and all orders of a court or other lawful authority related to its business and affairs or the Collateral and not permit any of its employees or agents to violate the same.

3.08 <u>Indemnification</u>. Dealer shall indemnify and hold Lender harmless from and against any and all losses, claims, demands, costs, damages, liabilities, and expenses of any nature whatsoever, including, without limitation, attorneys' fees, judgments, fines, settlements, and all other amounts ("Indemnification Amounts") arising from or in any way connected with Dealer's business and affairs, Dealer's handling or possession of the Collateral, Dealer's violation of any laws, regulations, or orders of a court or other lawful authority, and Dealer's liabilities to third parties ("Indemnification Events"). Dealer's obligation to indemnify and hold Lender harmless for Indemnification Amounts extends to, without limitation, any litigation or other proceeding that Lender may become involved in arising from Indemnification Events and any litigation or other proceeding to enforce or effectuate these rights to indemnification, incurred in anticipation of such proceedings, during such proceedings, on appeal, and post-judgment.

## IV. DEALER'S REPRESENTATIONS AND WARRANTIES

4.01 <u>Permits and License.</u> Dealer represents and warrants that it has all applicable licenses and permits to conduct business as a retail or wholesale seller of the vehicle inventory and will continue to possess the same throughout the term of this Agreement.

4.02 <u>Good Standing.</u> Dealer represents and warrants that it is active and in good standing in all jurisdictions in which it is organized or authorized to conduct business and will remain as such throughout the term of this Agreement.

4.03 <u>Title.</u> Dealer represents and warrants that at the time of the execution of this Agreement and at the time of each Advance that it has and will continue to have good and marketable title to the vehicle inventory, free of all security interests, liens, mortgages, claims, demands, or other charges or encumbrances, except for those security interests in favor of Lender arising from this Agreement.

4.04 <u>Litigation.</u> Dealer represents and warrants that as of the execution of this Agreement and during the term of this Agreement, that no proceedings—whether civil, criminal, administrative, or otherwise—are occurring, pending, or threatened, or will occur in the future, which adversely affect the Collateral or Lender's rights in it or adversely affect Dealer's business and affairs or its ability to meet its obligations under this Agreement.



4.05 <u>Counsel.</u> Dealer represents and warrants that it has had the assistance of counsel in reviewing and executing this Agreement or has had a fair opportunity to obtain the same. Dealer waives any defense, avoidance, or objection to the validity or enforceability of this Agreement by reason of dealer's lack of counsel in executing this Agreement.

4.06 <u>Reliance.</u> Dealer hereby acknowledges that Lender is relying on Dealer's representations and warranties in executing this Agreement.

## V. DEFAULT AND REMEDIES

5.01 <u>Events of Default.</u> The following shall constitute Events of Default: Dealer failing to pay any amounts due to Lender under this Agreement when they are due; Dealer breaching this Agreement in any way; if, at any time, any of Dealer's representations or warranties are breached or are not true; Dealer taking any action, or Dealer's failure to act, that impedes or impairs Lender's ability to protect its rights under this Agreement or obtain information from Dealer; any of Lender's security interests in the Collateral, or any part thereof, becoming subordinate to another security interest, lien, mortgage, or other encumbrance; and Dealer's failure to promptly provide information to Lender upon demand or request as provided for in this Agreement.

5.02 <u>Remedies.</u> Upon an Event of Default, Lender may, at its option, declare all advances and other outstanding amounts Dealer owes to Lender under this Agreement immediately due and payable and once so declared Dealer shall immediately pay the same to Lender. Lender shall be entitled to all relief available in law and equity, including, without limitation, repossession of Collateral, damages, and all other rights and remedies available under the Uniform Commercial Code. Dealer hereby acknowledges that damages may not be an adequate remedy for Lender to protect its interests under this Agreement and that equitable relief, including temporary or permanent injunctions, may be appropriate to protect Lender's interests. Dealer shall also pay to Lender all of its costs and expenses incurred by reason of Dealer's default, including, without limitation, all of Lender's attorney's fees, including, without limitation, such attorney's fees and expenses that are incurred in anticipation of litigation or other proceedings, during such litigation or other proceedings, on appeal, and post-judgment.

5.03 <u>Dealer's Security Interests and Receivables.</u> Dealer hereby acknowledges that its security interests and rights to payment arising from items of vehicle inventory being sold, if any, are proceeds of such Collateral. Upon an Event of Default, Dealer shall fully and promptly cooperate with Lender in contacting purchasers or such other persons who owe payment to Dealer and direct them to make their payments directly to Lender. Dealer shall also fully and promptly cooperate with Lender in taking all action and executing all documents or instruments necessary or proper to perfect or otherwise effectuate Lender's right to Dealer's security interests, if any, including, without limitation, executing such title documents or assignments that may be necessary. Dealer hereby irrevocably appoints Lender and its agents, employees, officers, and other representatives to be its attorney-in-fact and agent to take such action and to execute such documents or instruments. This power of attorney shall survive dissolution, cancellation, or such other event causing Dealer's corporate, non-corporate, or other existence to end.

## VI. GENERAL PROVISIONS

6.01 <u>Governing Law; Venue.</u> This Agreement shall be construed in accordance with and be governed by the laws of the State of Kansas, without regard to generally applicable principles of conflicts of law. Any dispute that may arise out of this Agreement, whether it is in tort or otherwise, shall take place at the 10th Judicial District Court of Kansas in Johnson County, Kansas, and in no other court or jurisdiction. Each Party hereto consents to the jurisdiction of such court.

6.02 <u>Section Titles.</u> All section titles, captions, and labels are for convenience only and do not represent substantive terms of this Agreement.

6.03 <u>Interpretation of Terms.</u> Whenever the context may require in interpreting this Agreement: any pronouns used in this Agreement shall include the masculine, feminine, and neuter forms; the singular form of any words shall include the plural and vice versa; the words "each," "every," "any," and "all," shall all include one another; and the words "and" and "or" shall include one another. No provision of this Agreement shall be interpreted against any party hereto on the basis that such party was the draftsman of such provision, and no presumption of proof shall arise disfavoring or favoring any party by virtue of the authorship of any of the provisions of this Agreement.

6.04 <u>Binding Effect.</u> This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their heirs, executors, administrators, successors, legal representatives, and assignees.

6.05 <u>Integration.</u> This Agreement constitutes the entire agreement of the Parties as to the subject matter herein. No other agreements, representations, or warranties have been made by, between, or among the Parties as to the subject matter herein.

6.06 <u>Waiver.</u> Waiver of strict performance of any provision of this Agreement shall not constitute a waiver of any future performance of that provision so waived.

6.07 <u>Counterparts and Copies.</u> This Agreement may be executed in counterparts, all of which together shall constitute an agreement binding on all the Parties hereto, notwithstanding that all such Parties are not signatories to the original or the same counterpart. A copy of this Agreement, so long as it clearly shows the terms of this Agreement, may be admitted into evidence in any proceeding involving any of the Parties.

6.08 <u>Severability.</u> If any part of this Agreement shall be held or found to be invalid, illegal, or unenforceable in any respect, the remainder shall remain valid, legal, and enforceable to the fullest extent allowed in law and equity.

6.09 <u>Authority to Sign.</u> Each person signing this Agreement hereby represents and warrants to all of the Parties that he or she has the authority to sign this Agreement on behalf of their respective Party.

6.10   Modification. This Agreement may only be modified in a writing signed by all parties.

_____
Ryan Davis, Officer of BacklotCars, Inc.
Lender

DocuSigned by:

*Cliff Geary*

B25649D132CB4F5
_____
Cliff and Sons Auto Sales by Cliff Geary
Dealer

Cliff Geary

7/18/2018 10:01:08 AM CDT

## GUARANTY

In consideration of the execution of the Agreement, and the covenants, promises, and forbearances contained therein, I ("Guarantor") hereby unconditionally agree to pay to Lender all amounts that Dealer may owe to Lender now or in the future under the Agreement. I acknowledge that my guaranty shall apply notwithstanding any increase in the amounts Dealer owes to Lender under the Agreement. I hereby acknowledge that Lender may proceed directly and immediately against me without first pursing relief against any other person, including Dealer. To the extent allowed by law, I hereby freely and voluntarily waive notice, set-off, demand, or any other defense to this unconditional guaranty.

DocuSigned by:

*Cliff Geary*

B256490132CB4E5
Guarantor

Cliff Geary

7/18/2018 10:01:08 AM CDT